Citation Nr: 1806314 
Decision Date: 01/31/18 Archive Date: 02/07/18

DOCKET NO. 14-00 494 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Houston, Texas


THE ISSUE

Entitlement to service connection for a skin disorder, to include as due to herbicide agent exposure.


REPRESENTATION

Veteran represented by: Texas Veterans Commission


WITNESS AT HEARING ON APPEAL

Veteran


ATTORNEY FOR THE BOARD

D. M. Donahue Boushehri, Counsel 


INTRODUCTION

The Veteran served on active duty in the United States Navy from August 1958 to August 1960 and from June 1961 to July 1979, including service in the Republic of Vietnam. 

This matter comes before the Board of Veterans' Appeals (Board) on appeal from an August 2009 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Houston, Texas.

In June 2016, a Travel Board hearing was held before the undersigned; a transcript of the hearing is associated with the record. In August 2016, the appeal was remanded for additional development, to include obtaining a VA examination with opinion. In October 2017, the appeal was again remanded to obtain additional records.

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2017). 38 U.S.C. § 7107(a)(2) (2012).


FINDING OF FACT

The probative evidence of record indicates that it is less likely than not that the Veteran's current skin disorders are causally or etiologically related to his active service, to include his presumed in-service exposure to herbicide agents.


CONCLUSION OF LAW

The criteria for entitlement to service connection for a skin disorder have not been met. 38 U.S.C. §§ 1110, 1131, 5103, 5107A (2012); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.307, 3.309 (2017).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

I. VA's Duty to Notify and Assist

VA has met all statutory and regulatory notice and duty to assist provisions. See 38 U.S.C. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126 (2012); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326; see also Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015).

As noted in the Introduction, the Board remanded this case in August 2016 and October 2017. The August 2016 Board remand directed the AOJ to obtain a VA examination with an opinion for the Veteran's claimed skin disorder. The Veteran underwent an examination in April 2017, and an additional VA opinion was obtained in August 2017. The AOJ readjudicated the claim in an August 2017 supplemental statement of the case. 

The October 2017 Board remand directed the AOJ to obtain any outstanding VA treatment records and associate any private treatment from separation from service. The AOJ obtained updated VA treatment records and asked the Veteran to identify any further private treatment records in an October 2017 letter, and readjudicated the claim in a December 2017 supplemental statement of the case. The Veteran did not respond to the October 2017 letter or otherwise identify any further outstanding, relevant private treatment records. Accordingly, the Board finds that VA at least substantially complied with the October 2017 Board remand. See 38 U.S.C. § 5103A(b); Stegall v. West, 11 Vet. App. 268, 271 (1998); D'Aries v. Peake, 22 Vet. App. 97, 105 (2008).


II. Service Connection 

Legal Criteria

Generally, service connection may be established for a disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C. §§ 1110, 1131 (2012); 38 C.F.R. § 3.303 (2017). To establish service connection for a disability, the Veteran must show: (1) the existence of a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the current disability and the disease or injury incurred in or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004). Service connection may also be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

In addition, certain diseases may be presumed to have been incurred in service where a Veteran was exposed to herbicide agents, such as Agent Orange, while on active service, even when there is no evidence of such disease during the period of service. 38 U.S.C. § 1116; 38 C.F.R. §§ 3.307(a)(6), 3.309(e). Veterans who served in the Republic of Vietnam during the Vietnam era are presumed to have been exposed to herbicide agents. 38 C.F.R. § 3.307(a)(6)(iii). Generally, the regulation applies where an enumerated disease becomes manifest to a compensable degree at any time after active service. 38 C.F.R. § 3.307(a)(6)(ii). The only skin disability enumerated in the regulations is chloracne and other acneform diseases consistent with chloracne. 38 C.F.R. § 3.309(e).

Analysis

The Veteran seeks entitlement to service connection for a skin disorder. In a July 2010 statement, the Veteran asserted his skin disorder was due to removing clothing soaked in Agent Orange, blood, and other unknown chmeicals from wounded soldiers while in service. 

Service treatment records include examination reports dated in August 1958, March 1961, October 1963, March 1964, December 1967, June 1969, July 1972, November 1974, and December 1976 indicate the Veteran had no skin abnormalities. In a medical history report dated in November 1964 the Veteran specifically denied any tumor, growth, cyst, or cancer. In medical history reports dated in June 1969, July 1972, and July 1979, the Veteran specifically denied any skin diseases. Upon separation examination in February 1979, the Veteran underwent a dermatology consultation. The examiner noted the Veteran had a small brown asymptomatic papule on the side of an old scar for the past 20 years. The assessment was dermatofibroma. 

During a June 2016 Board hearing, the Veteran testified that he first noticed a skin condition six or seven months after he came back from Vietnam. He stated he noticed a small wart. He stated his doctor told him it was a mole and that through the years he has had a few more emerge. 

The Veteran underwent a VA examination in April 2017. The examiner noted the Veteran has the current skin condition of dermatitis on his dorsal forearms and anterior shins bilaterally. This skin condition has been present over the past 10 years by Veteran's history and medical records review. The examiner reported there is no medical evidence for the presence of a chronic skin condition in the service or in the years to follow. Therefore, the claimed skin disorder was less likely than not (less than 50 percent probability) incurred in or caused by the claimed in-service injury, event, or illness, to include as due to herbicide exposure.

During an August 2017 VA examination, the dermatologist reported that the Veteran was treated for a rash on his forearms from taking certain medications. The Veteran did not provide a current list of medications or his private treatment records. The examiner noted the Veteran has not been under the care of a doctor for his skin disorders until the last 8 months. He had been treated with cryotherapy for his skin lesions. The examiner noted Dr. S. treats the Veteran for a drug rash on the lower legs, which cleared after the Veteran stopped taking a certain medication. The Veteran reported he has itching 30 minutes after showering. After retiring from the military the Veteran reported he worked in the oil field with sun exposure. Upon physical examination, the examiner noted some seborrheic keratosis on the shoulders. The examiner noted actinic keratosis at the left forearm and dorsum hand. The examiner also reported multiple flat, hypopigmented and hyperpigmented macule of the lower legs which appeared to be scars. The examiner indicated there was no specific dermatofibroma from his active duty physical. The examiner recognized the Veteran's Vietnam service, but found the Veteran's current diagnoses of dry skin and actinic keratoses are not associated with Agent Orange. The examiner opined that the Veteran's skin problems are a normal result of prolonged sun exposure, aging, and bathing habits. He also has multiple hypo and hyperpigmented scars on his leg, which were a result of a reaction to a recent cardiac medication for a nonservice-connected disability. The examiner stated that there is probably a 20 percent chance that his 20 years of service may have helped set him up for this problem; however, the examiner stated there is a greater, about 60 percent, probability this resulted from his work in the oil fields. The examiner reported that this is also a normal occurrence for anyone that lives in South Texas that is 79 years old and did not protect their skin at a younger age.

In regard to the Veteran's assertion that the current skin disability is causally related to in-service exposure to herbicide agents, the record confirms that he had in-country service in the Republic of Vietnam during the Vietnam era. Therefore, he is presumed to have been exposed to herbicide agents. 38 C.F.R. § 3.307(a)(6)(iii). However, the only skin disability listed as a disease associated with exposure to certain herbicide agents is chloracne and other acneform diseases consistent with chloracne. 38 C.F.R. § 3.309(e). There is no competent evidence of record showing that the Veteran has been diagnosed with such a condition. The Veteran's diagnosed as dermatitis is not a disease that has been associated with exposure to herbicide agents, and therefore may not be service connected on a presumptive basis under 38 C.F.R. §§ 3.307(a)(6) and 3.309(e). Nevertheless, the presumptive regulations do not preclude a claimant from establishing service connection with proof of direct causation. See Combee v. Brown, 34 F.3d 1039, 1043 (Fed. Cir. 1994). Therefore, the Board will consider whether the Veteran is entitled to service connection for the diagnosed skin condition on a direct basis, to include as due to the in-service exposure to herbicide agents.

In this case, the Board affords significant probative weight to the August 2017 VA examiner's opinion. The examiner reviewed the record, conducted a physical examination, and considered the Veteran's military and medical history, to include his presumed exposure to herbicide agents. The examiner based his opinion on a review of relevant medical literature and on his knowledge and expertise as a medical professional. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008); Prejean v. West, 13 Vet. App. 444 (2000). He explained that there is no medical or scientific evidence linking the Veteran's diagnosed dry skin and actinic keratoses to exposure to herbicide agents. In fact, the examiner determined the Veteran's skin disorders were more likely due to post-service sun exposure and age. 

The examiner also stated that there was no evidence of dermatofibroma diagnosed on separation from service. The Board, therefore, accepts his opinion as probative evidence that it is less likely than not that the Veteran's current skin disorders are related to his active service, to include his presumed in-service exposure to herbicide agents.

The Board acknowledges the Veteran's assertions that the current skin disorder is etiologically related to his in-service exposure to herbicide agents. The Veteran is competent to report his symptoms and their onset. See Layno v. Brown, 6 Vet. App. 465, 469 (1994). However, he has not been shown to possess the specialized knowledge and expertise necessary to render an opinion on a complex medical question such as the likely cause or etiology of a particular skin disability. See Kahana v. Shinseki, 24 Vet. App. 428 (2011); Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007). Because the Veteran is a lay witness, his opinions on medical matters such as the likely etiology of his diagnosed skin disabilities is not considered competent, and is therefore not probative in showing that the disabilities are related to his active service. 

In summary, the probative evidence of record indicates that it is less likely than not that the Veteran's current skin disabilities had their onset during his active service or are causally or etiologically related to his active service, to include his presumed in-service exposure to herbicide agents. In view of the foregoing, the Board concludes that the preponderance of the evidence is against the claim for entitlement to service connection for a skin disability. Because the preponderance of the evidence is against the claim, the benefit-of-the-doubt doctrine is not for application, and the claim must be denied. 38 U.S.C. § 5107(b); see also Gilbert v. Derwinski, 1 Vet. App. 49 (1990).



ORDER

Entitlement to service connection for a skin disability, to include as due to herbicide agent exposure, is denied.



____________________________________________
Nathaniel J. Doan
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs